UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CRAIG LERON FLYNT,

                 Petitioner,

v.                                       Case No:  6:11-cv-1803-Orl-37GJK

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

                 Respondents.

_____/

**ORDER**

      Craig Leron Flynt ("Petitioner") initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. 1, filed November 14, 2011).  Upon consideration of the petition and the supporting memorandum (Doc. 2), the Court ordered Respondents to show cause why the relief sought in the petition should not be granted.  Thereafter, Respondents filed a timely response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts*.  Petitioner filed a reply to the response.

      Petitioner alleges five claims for relief in his habeas petition:  (1) trial counsel was ineffective for using threats and coercion to force Petitioner to plead guilty; (2) trial counsel was ineffective for failing to move for a competency hearing prior to Petitioner's plea; (3) trial counsel was ineffective for failing to investigate and inform Petitioner of a possible insanity defense; (4) trial counsel was ineffective for failing to inform the trial court that Petitioner was taking medication at the time of his guilty plea; and (5) the

post-conviction court abused its discretion by refusing to appoint counsel for Petitioner's post-conviction evidentiary hearing (Doc. 1 at 5-13).

For the reasons set forth below, the petition is denied.

## I.    Procedural History

On October 13, 2008, Petitioner entered a plea of guilty to one count of first degree murder and to one count of violation of probation (App. A at 197-198; 201-213).[1] In exchange for the plea, the State entered a *nolle prosequi* on felony battery and aggravated assault charges against Petitioner.  Petitioner was sentenced to life in prison without the possibility of parole on the murder charge and to five years in prison on the violation of probation.

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (App. A at 61).  After an evidentiary hearing, Petitioner's Rule 3.850 motion was denied (App. A at 58; 215). Florida's Fifth District Court of Appeal *per curiam* affirmed (App. D); *Flynt v. Florida*, 65 So.3d 1064 (Fla. 5th DCA 2011).

The instant petition was timely filed in this Court on November 14, 2011 (Doc. 1).

## II.    Governing Legal Principles

### A.    *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

---

[1] Citations to the record refer to the appendices filed by Respondents on March 15, 2012 (Doc. 16).

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Calliper*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.   *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Patton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) or, "if the state court either unreasonably extends a legal principle from [Supreme

3

Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

Finally, the Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum). When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1)*; see e.g. Miller–El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

### B.    *Standard for Ineffective Assistance of Counsel*

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) whether the deficient performance prejudiced the defense. 466 U.S. 668, 687-88 (1984). Therefore, a habeas court's review of a claim under the *Strickland* standard is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayanz*, 556 U.S. 111, 113 (2009) (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003))). Because both parts of the *Strickland* test must be satisfied in order to demonstrate a violation of the Sixth Amendment, a district court need not address the performance prong if the petitioner cannot meet the prejudice prong, or vice versa. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The petitioner bears the burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466

U.S. at 690). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden of demonstrating prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002).  Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

III.   <u>Analysis</u>

A.   *Claim One*

Petitioner argues that he received ineffective assistance of counsel because counsel "used coercion and threats . . . to force Petitioner into a plea agreement[.]" (Doc. 2 at 3).  Specifically, Petitioner asserts that counsel forced him to plead guilty by telling him that the State would seek the death penalty if he chose to go to trial (Doc. 1 at 5). Petitioner alleges that, if not for counsel's erroneous advice, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 3.  Petitioner raised this claim in

his Rule 3.850 motion and, after an evidentiary hearing, the trial court denied the claim (App. A at 215). The record supports the state court's denial of this claim.

In analyzing the constitutionality of a guilty plea, a reviewing court must determine that the plea represents a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366 (1985). The Eleventh Circuit Court of Appeals has held that "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991).

Petitioner has not demonstrated that he misunderstood the charges against him or the consequences of entering a guilty plea.  Petitioner's signed plea agreement stated that Petitioner had not been pressured or forced to enter a plea and that Petitioner was not under the influence of drugs or alcohol and was not suffering from any mental problem at the time he signed the agreement (App. A at 197-198).  Prior to accepting Petitioner's plea, the state trial court conducted a plea colloquy.  During the colloquy, Petitioner told the court that he had read the plea agreement, discussed its contents with his attorney, and understood all of the rights he was giving up by entering the plea. *Id.* at 207-208.  The Supreme Court has determined that "the representations of the defendant . . . [at a plea proceeding] constitute a formidable barrier in any subsequent

collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

Moreover, Petitioner's allegations that counsel coerced him to plead guilty are disputed by the record. Counsel Matthew D. Phillips ("Phillips") testified that, although he was concerned that Petitioner would face the death penalty if he proceeded to trial, he did not coerce him to enter a plea (App. A at 31). Phillips testified that he spoke with the state prosecutor and became concerned that the case "could become a death penalty case[.]" *Id.* at 32. He believed that if the state sought the death penalty, the nature of Petitioner's crime established four aggravating circumstances, including that the murder was cold, calculated and premeditated and that the murder was especially heinous, atrocious, and cruel. *Id.* at 31-33. Phillips testified that he made sure that Petitioner communicated with his family regarding the possibility of a plea. *Id.* at 37. He further testified:

> [Petitioner] never indicated to me that, no, I don't want to accept this plea. Instead it was the opposite, he was agreeing with my concerns. He was concerned about going to death row. And he realized the overwhelming nature of the evidence against him, and, you know, didn't dispute that he caused the death of Ms. Dowdell, really didn't dispute any of the allegations. And we had conversations about what happened that night. So, no, Mr. Flynt indicated that he wanted to take this plea, and that's what we did. If he had told me at any point, no, I don't want to plead guilty, I don't want a life sentence, I want to go to trial, that's what we would have done.

*Id.* at 37-38.

Petitioner's testimony at the post-conviction evidentiary hearing contradicted that of Phillips. Petitioner testified that counsel had not discussed the aggravating

factors of the murder with him and had not provided him a chance to speak with his family members before entering the plea (App. A at 12-13).  However, he also testified that he understood the written plea agreement on the day he entered the plea, but he felt that signing the form was his only option because otherwise, he would be "sitting on death row." *Id.* at 14, 17.  The state court resolved the conflicts in testimony in favor of believing Phillips' testimony over that of Petitioner. Credibility determinations are questions of fact, entitled to deference under the AEDPA. *See Martin v. Kemp*, 760 F.2d 1244, 1247 (11th Cir. 1985) (factual issues include basic, primary, or historical facts, such as external events and credibility determinations).  The court determined that Petitioner was aware of the circumstances, had discussed them with his family, and freely, voluntarily, and knowingly, entered the written plea agreeing to a life sentence (App. A at 58, 211). Petitioner has not rebutted the trial court's findings by clear and convincing evidence, and they are presumed correct. *See Miller–El*, 537 U.S. at 340.

Petitioner has not demonstrated that the state court's denial of this claim involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, claim one is denied pursuant to 28 U.S.C. § 2254(d).[2]

---

[2] In his reply, Petitioner argues that the recent Supreme Court decisions in *Missouri v. Frye*, 132 S. Ct. 1399 (2012) and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) compel a determination that no competent attorney would have recommended that Petitioner agree to life in prison "just 70 short days after his arrest." (Doc. 21 at 4).  Indeed, both the *Frye* and *Lafler* decisions recognize that defendants are entitled to competent counsel during plea negotiations and that claims of ineffective assistance during those negotiations are determined under the two-part test set forth in *Strickland*.  *Frye*, 132 S. Ct. at 1405-06; *Lafler*, 132 S. Ct. at 1384-85.  However, in *Frye*, the narrow question

### B.     Claims Two and Four

In claim two, Petitioner argues that counsel was ineffective for failing to move the court for a competency hearing in light of "serious questions about Petitioner's competency." (Doc. 1 at 7).   He alleges that his suicide attempt at the murder scene should have placed counsel on notice that his competency to proceed was at issue. *Id.* In claim four, Petitioner argues that counsel failed to inform the court that Petitioner was "under the influence of prescribed medication at the time of accepting the plea." *Id.* at 11.   Petitioner alleges that counsel should have investigated the medicine prescribed for his physical ailments to see if they would have affected his mental processes. *Id.* Petitioner raised these issues in his Rule 3.850 motion for post-conviction relief, and the trial court determined that Petitioner presented no evidence that he was incompetent to enter his guilty pleas (App. A at 215).   The state court properly denied these claims.

In *Futch v. Dugger,* the Eleventh Circuit Court of Appeals considered an ineffective assistance claim regarding trial counsel's failure to determine a petitioner's competency to stand trial. 874 F.2d 1483, 1486 (11th Cir. 1989). The court stated that, "[i]n order to demonstrate prejudice from counsel's failure to investigate his

_____

presented was "whether defense counsel has the duty to communicate the terms of a formal offer to accept a plea on terms and conditions that may result in a lesser sentence, a conviction on lesser charges, or both." *Frye*, 132 S. Ct. at 1408.  The case before the Court is not one in which Petitioner contends his counsel failed to communicate a plea offer to him.  Accordingly, *Frye* does not aid Petitioner.  Likewise, in *Lafler*, the only question addressed by the Court was the appropriate remedy when a defendant has shown that ineffective assistance of counsel caused the rejection of a plea, leading to a trial and a more severe sentence. 132 S. Ct. at 1388.  Here, Petitioner did not proceed to trial, and *Lafler* is inapposite to Petitioner's situation.

competency, a petitioner has to show that there exists 'at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.'" *Id.* at 1487 (quoting *Alexander v. Dugger,* 841 F.2d 371, 375 (11th Cir. 1988)).  In the instant case, other than his own vague assertions of insanity, Petitioner has presented no evidence that additional psychological testing would have shown that he was incompetent.   Accordingly, Petitioner cannot demonstrate prejudice from counsel's failure to move for a competency hearing.

Phillips was experienced in handling homicide cases and had determined that Petitioner was competent to proceed based upon his own contacts with Petitioner and based upon a mental health evaluation.  Phillips testified that he saw no signs of a mental illness when he met with Petitioner and that Petitioner never reported any type of psychiatric history (App. A at 45).  He further determined that Petitioner met the standard for competence because Petitioner understood what he was charged with, understood Phillips' role as a defense attorney, and understood how the process worked (App. A at 46-47).   However, in "an abundance of caution," Phillips contacted psychologist Dr. Harry Krop, who sent a licensed mental health counselor to the prison to interview Petitioner. *Id.* at 46.[3]   Dr. Krop determined that Petitioner "fully understands his legal plight both with regard to the seriousness of the charges and the possible penalties.  He certainly understands the adversarial process and is capable of

---

[3] Phillips testified that his standard practice was to order a mental health evaluation in every homicide case and that his request for an evaluation was not based upon any specific concerns regarding Petitioner's mental health (App. A at 45).

assisting his attorney in all legal proceedings including plea negotiations." (App. B). Accordingly, Dr. Krop determined that Petitioner was competent to proceed and "given [Petitioner's] current presentation and lack of psychiatric history, there is no current evidence to suggest the use of an insanity defense." *Id.* Counsel's reliance on Dr. Krop's evaluation was not unreasonable. *Darling v. Sec'y, Dep't. of Corr.*, 619 F.3d 1279, 1284 (11th Cir. 2010) (attorneys were entitled to rely on the psychological evaluation performed by mental health expert). Accordingly, Petitioner cannot demonstrate deficient performance from counsel's failure to move for a competency hearing and claim two fails to satisfy both prongs of *Strickland*.[4]

Likewise, nothing in the record indicates that Phillips had reason to believe that Petitioner's mental health was compromised by the drugs he was taking to treat his diabetes, high blood pressure, and nerve damage to his hands and feet. Phillips testified that Petitioner never told him that he took medicine that "might have side effects that affect his thinking." (App. A at 38). Petitioner testified at the post-conviction evidentiary hearing that the drugs caused suicidal thoughts and depression, but also testified that "he didn't know about the side effects of the medicine until months later." *Id.* at 15. Petitioner could not remember whether he told the mental health counselor who evaluated him for competency about the medication he was taking and its effect on

---

[4] To the extent Petitioner argues that his suicide attempt was sufficient to raise a question regarding his competency to stand trial, no such presumption exists. In *Drope v. Missouri*, 420 U.S. 162 (1975), the United States Supreme Court suggested that, while a suicide attempt is an indication of possible mental instability, it alone does not necessarily create a reasonable doubt about a defendant's competency to stand trial. *Id.* at 180.

his mental processes. *Id.* at 22-23.  Moreover, Petitioner's signed plea agreement stated that Petitioner was not under the influence of drugs or alcohol and was not suffering from any mental problems at the time he signed the agreement. *Id.* at 197-198.

Given that Phillips had no reason to believe that Petitioner's medication affected his competency, he did not perform deficiently by failing to alert the court to Petitioner's use of medication. *See Pardo v. Secretary, Dept. of Corr.*, 587 F.3d 1093, 1102 (11th Cir. 2009) (where counsel had Pardo evaluated and no doctor or expert found him incompetent, counsel acted reasonably in his investigation and determination not to seek an evidentiary hearing regarding competency).  Moreover, Petitioner has presented no evidence that, even had Phillips alerted the trial court to Petitioner's medication use, a competency hearing would have resulted or that Petitioner would have been found incompetent to proceed. *See Pate v. Robinson*, 383 U.S. 375, 385-86 (1966) (A trial judge must conduct a *sua sponte* sanity hearing only when the defendant's conduct and the evidence raises a "bona fide doubt" regarding the defendant's competence to stand trial.).  Accordingly, Petitioner has demonstrated neither deficient performance nor prejudice resulting from counsel's failure to alert the trial court to Petitioner's use of medication.  Claims four fails under both prongs of *Strickland*.

Claims two and four are denied pursuant to 28 U.S.C. § 2254(d).

**C.    *Claim Three***

Petitioner argues that counsel was ineffective for failing to "to investigate and inform Petitioner of any viable defense[s], especially an insanity defense." (Doc. 1 at 9). Petitioner alleges that, because he was not advised of the insanity defense, he was

forced to plead guilty (Doc. 2 at 13).   Petitioner raised this issue in his Rule 3.850 motion, and the trial court denied the claim because "there was no evidence demonstrated to Mr. Phillips or anyone else to support a finding of incompetency or insanity." (App. A at 58).   The record before this Court supports the state court's conclusions.

In the signed plea agreement, Petitioner acknowledged that, by pleading guilty, he was relinquishing his rights "to present any defense" to the judge or jury (App. A at 197).   At the plea colloquy, Petitioner informed the court that he understood the agreement and understood the rights he was giving up by pleading guilty *Id.* at 102. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 73-74.  Petitioner now argues that counsel failed to advise him of a potential insanity defense and, as a result, his plea was unknowing and involuntarily (Doc. 2 at 13).  However, Phillips testified at the post-conviction hearing that he *had* discussed an insanity defense with Petitioner, but because there were no signs of insanity, there was "not an insanity defense to pursue." (App. A at 50).   Phillips further testified that Petitioner never told him that he took medication that affected his thinking, and when describing the events that lead to the murder, "[Petitioner] never said anything that indicated a potential of a thought disorder or a mental illness." *Id.* at 38.  Rather, during their first meeting, Petitioner told Phillips that he had been angry with the victim because she would not answer his phone calls and would not allow him to see their children.   *Id.* at 39.   In addition, Dr. Krops's report on Petitioner's mental health evaluation stated that Petitioner "did not present with evidence of a thought disorder

and his cognitive processes are intact." (App. B).  The report concluded that, "given [Petitioner's] current presentation and lack of psychiatric history, there is not current evidence to suggest the use of an insanity defense." *Id*.

The trial court was entitled to believe the testimony of Phillips over that of Petitioner, to credit Dr. Krop's report, and to conclude that Petitioner could not show deficient performance because Phillips had no bases on which to pursue an insanity defense.  This claim also fails on the prejudice prong of the *Strickland* analysis because Petitioner has presented no evidence demonstrating that he was actually incompetent or insane at any relevant time.  *See See Presnell v. Zant*, 959 F.2d 1524, 1533 (11th Cir.1992) (rejecting defendant's ineffective assistance of counsel claim based upon attorney's failure to raise insanity defense because defendant failed to come forward with evidence supporting insanity defense); *Adkins v. Motley*, 2009 WL 960107, at *17 (E.D. Ky. April 7, 2009) (finding that, in order to establish prejudice, the petitioner must present evidence establishing that an expert witness could have been obtained to testify favorably for him or her on the pertinent issue).

Petitioner fails to meet his burden of proving that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying relief on this claim. Accordingly, claim three is denied pursuant to 28 U.S.C. § 2254(d).

### D.    Claim Five

Petitioner alleges that his Fourteenth Amendment rights to due process of law were violated by the state court's failure to appoint counsel during his post-conviction evidentiary hearing (Doc. 1 at 13).  Petitioner alleges that he suffered prejudice because,

had the state provided counsel, "there is a great probability that the [post-conviction] hearing would have [gone] in Petitioner's favor." (Doc. 2 at 18).

When a federal court considers whether habeas corpus is warranted, the decision is limited to whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254; *Rose v. Hodges,* 423 U.S. 19, 21 (1975) (*per curiam*). The United Supreme Court has never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions.  Rather, the Supreme Court has established that "the right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *see also Coleman v. Thompson*, 501 U.S. 722, 725 (1991) ("Because there is no constitutional right to an attorney in state postconviction proceedings, a petitioner cannot claim constitutionally ineffective assistance in such proceedings) (internal citations omitted); *Barbour v. Haley*, 471 F.3d 1222 (11th Cir. 2006) ("[T]his court has consistently held that there is no federal constitutional right to counsel in postconviction proceedings.").  Accordingly, claim five is not cognizable under § 2254 as a constitutional claim.  To the extent that Petitioner claims that the trial court committed an error of state law by denying his request for counsel at the post-conviction evidentiary hearing, such claim is also not cognizable in this habeas corpus petition.  A state's interpretation of its own rules or statutes does not raise a federal constitutional issue. *Wainwright v. Goode*, 464 U.S. 78 (1983).

Because this claim does not present an issue cognizable in this Court pursuant to 28 U.S.C. § 2254, claim five is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   Certificate of Appealability and Leave to Appeal In Forma Pauperis

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).   "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller–El*, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus (Doc. 1) filed by Craig Leron Flynt is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.  Petitioner is **DENIED** a Certificate of Appealability.

3.  The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** at Orlando, Florida, this 13th day of September, 2012.

ROY B. DALTON JR.
United States District Judge

Copies to:
OrlP-4 9/13
Craig Leron Flynt
Counsel of Record

18